**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Generac Solar Power Systems Marketing, Sales Practices and Products Liability Litigation | MDL No. 3078 |

**RESPONSE OF DEFENDANTS GENERAC POWER SYSTEMS, INC.
AND GENERAC HOLDINGS INC. IN SUPPORT OF TRANSFER OF
ACTIONS TO THE EASTERN DISTRICT OF WISCONSIN FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1407**

## INTRODUCTION

Defendants Generac Power Systems, Inc. ("Generac") and Generac Holdings Inc. ("Generac Holdings," and collectively with Generac, "Generac Defendants") submit this Response to the Motion of Plaintiff for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings ("Motion"). The Generac Defendants support centralization of the five putative class actions that are the subject of the Motion (the "Actions") and of any subsequently filed tag-along actions involving similar facts and claims. The Generac Defendants oppose the Motion to the extent that it asks the Panel to centralize the Actions in the Northern District of California, and they instead ask the Panel to centralize the Actions in the Eastern District of Wisconsin, where they can be assigned to Judge Brett H. Ludwig.

For reasons stated in the Motion and this Response, the Actions present a classic case for centralization under 28 U.S.C. § 1407. The five Actions are pending in four different district courts, and in each, named plaintiffs seek to represent a putative nationwide class of purchasers of Generac's residential solar energy system, the PWRcell system. All the Actions are based on nearly identical allegations that the PWRcell system is defective, that Generac misrepresented the PWRcell system, and that class plaintiffs suffered economic losses. The Generac Defendants agree that centralization is proper because the Actions seek recovery under the same factual and legal theories on behalf of overlapping, potentially conflicting putative classes. Transferring the Actions to a single district court for coordinated or consolidated proceedings will promote judicial efficiency and the convenience of the parties and witnesses. Centralization will ensure that multiple courts do not have to address the same factual and legal issues; it will eliminate duplicative discovery, including duplicative class and expert discovery; and it will prevent inconsistent rulings on pretrial motions, including class certification motions.

The Generac Defendants submit that the Eastern District of Wisconsin is the most logical venue for centralizing the Actions. Two of the five Actions are pending in that District; the Generac Defendants are headquartered there, so common witnesses and evidence are located in the District; Wisconsin is a convenient, central, accessible location; and the District currently has only one MDL. The Eastern District of Wisconsin is thus best situated to manage the Actions. And although the two Wisconsin Actions have been assigned to a magistrate, four other cases against Generac Holdings or its officers and directors are also pending in the Eastern District of Wisconsin before Judge Ludwig: those cases (two securities lawsuits and two shareholder derivative lawsuits) are not before the Panel, but they arise from the same factual claims about allegedly undisclosed defects of the PWRcell system, so assigning the Actions to Judge Ludwig would promote judicial efficiency by fostering opportunities for coordinating the Actions with those four related cases.

Although the Motion seeks transfer to the Northern District of California because California public policy favors solar energy and California as a state is supposedly a leader in the solar energy industry, those considerations are irrelevant under the MDL statute to selection of the transferee district that is best suited to oversee the Actions. The Motion fails to identify any litigation-related connection that would warrant transferring the Actions to that District instead of the Eastern District of Wisconsin. The Generac Defendants request that the Panel transfer the Actions to the Eastern District of Wisconsin for coordinated or consolidated proceedings.

## **BACKGROUND**

### A.    **Generac's PWRcell System**

Generac is an energy technology company that provides both prime and backup power systems, along with clean energy products including solar energy and battery storage solutions. Generac Holdings is a holding company that is a parent corporation of Generac. The Generac

Defendants have their corporate headquarters in Waukesha, Wisconsin.

Among Generac's clean energy products is the PWRcell solar and battery storage system for residential use. The PWRcell system connects to rooftop solar panels and converts and stores electricity generated by the panels for use in the home. The components of the system can include batteries to store energy generated by the photovoltaic system, an inverter to convert direct current produced by the solar panels to alternating current, and PV Link optimizers to maximize energy harvested from the array of solar panels. The system also can include SnapRS devices used to meet Photovoltaic Rapid Shutdown (PVRS) required by the National Electrical Code (NEC 2018 and greater).

Generac supplied a Limited Warranty for the PWRcell system, which included, among other things, a twenty-five year warranty for the SnapRS components. Under the Limited Warranty, Generac warranted that the product would be free of defects for the warranty period and that "Generac will, at its discretion, repair or replace any part(s) which, upon evaluation, inspection, and testing by Generac" or an authorized third party "is found to be defective."

### B.    The Putative Class Actions

On October 28, 2022, the first of the five Actions was filed against Generac, and since then, the four other Actions have been filed against the Generac Defendants in federal court (approximately one every month). One Action is pending in the Northern District of California, one in the Eastern District of California, one in the Middle District of Florida, and two in the Eastern District of Wisconsin.[1] Last week, a sixth putative class action was filed against Generac

---

[1] *See* Complaint, *Haak v. Generac*, No. 8:22-cv-02470 (M.D. Fla. Oct. 28, 2022) (Motion Ex. C); Complaint, *Basler et al. v. Generac*, No. 2:22-cv-1386 (E.D. Wis. Nov. 21, 2022) (Motion Ex. D); Complaint, *Moon v. Generac, et al.*, No. 3:22-cv-09183 (N.D. Cal. Dec. 30, 2022) (Motion Ex. B); Complaint, *Dillon v. Generac*, No. 2:23-cv-00034 (E.D. Wis. Jan. 10, 2023) (Motion Ex. E); Complaint, *Locatell v. Generac, et al.*, No. 2:23-cv-00203 (E.D. Cal. Feb. 2, 2023) (Motion Ex.

in North Carolina state court based on nearly the same allegations.[2] Generac plans to remove that sixth action to federal court and identify it to the Panel as another action warranting centralization.

The plaintiffs in all five Actions allege that they purchased solar energy systems equipped with Generac PWRcell systems and that those systems failed to perform properly because they contained allegedly defective SnapRS devices that malfunctioned. *See, e.g.*, *Basler* Complaint ¶¶ 1, 6, 14-27. Specifically, each complaint alleges precisely the same theory—that the SnapRS devices become "overactive such that they turn 'on' and 'off' repeatedly instead of remaining in the 'on' or 'off' position, which can cause the units to overheat." *Id*. ¶ 43; *see Locatell* FAC ¶ 4; *Moon* Complaint ¶ 4; *Haak* Complaint ¶ 37; *Dillon* Complaint ¶ 43. Each complaint also alleges that, as a result of the defective SnapRS devices, the PWRcell system does not perform as expected because the systems suffer from "lockout" errors and shutdowns and therefore generate less electricity than expected. *See Locatell* FAC ¶ 4; *Moon* Complaint ¶ 4; *Haak* Complaint ¶ 63; *Basler* Complaint ¶¶ 44, 52; *Dillon* Complaint ¶¶ 46, 60. Each complaint further alleges that the PWRcell systems are unsafe because the defective SnapRS devices can "overheat, melt, [or] explode," damaging the SnapRS devices and potentially causing "fire damage" to plaintiffs' homes. *Basler* Complaint ¶ 52; *see Locatell* FAC ¶ 5; *Moon* Complaint ¶ 4; *Haak* Complaint ¶ 2; *Dillon* Complaint ¶ 1. Each Action likewise alleges that Generac knew of but failed to disclose the SnapRS defect; continued to market and distribute its PWRcell systems; and refused to remedy the alleged problem (because it refused to compensate the plaintiffs, replace the defective parts,

---

A); *see also* First Amended Complaint ("FAC"), *Locatell v. Generac, et al.*, No. 2:23-cv-00203 (E.D. Cal. Mar. 13, 2023) (Exhibit 1). Magistrate Judge Nancy Joseph, who is currently overseeing the two Actions in the Eastern District of Wisconsin (*Basler* and *Dillon*), has granted plaintiffs' unopposed motion to consolidate those Actions. *See Basler* Docket Sheet (Motion Ex. D).

[2] *Baltimore et al. v. Generac*, No. 23CV006415-910 (N.C. Super. Ct. Wake Cnty. filed Mar. 21, 2023).

recall the product, or honor plaintiffs' warranty claims). *See Locatell* FAC ¶¶ 5, 64; *Moon* Complaint ¶¶ 5, 56-57; *Haak* Complaint ¶¶ 3-7; *Basler* Complaint ¶¶ 7-10; *Dillon* Complaint ¶¶ 8-9, 14-15. The Actions specifically allege that Generac was informed of the defect in the SnapRS device by the same third-party retailer and installer, Power Home Solar d/b/a Pink Energy ("PHS"). *See Locatell* FAC ¶ 57; *Moon* Complaint ¶ 52; *Haak* Complaint ¶¶ 51-52; *Basler* Complaint ¶¶ 71-176; Dillon ¶¶ 36, 41. The claimed damages for which plaintiffs seek recovery include increases in electrical bills allegedly incurred due to decreased energy production; the costs of repairing or replacing PWRcell systems; damage to plaintiffs' solar power systems; or damage to other property including from SnapRS devices melting or catching fire. *See Locatell* FAC ¶ 99; *Moon* Complaint ¶ 88; *Haak* Complaint ¶ 10; *Basler* Complaint ¶ 67; *Dillon* Complaint ¶ 66.

The Actions have been filed by five different law firms, representing different named plaintiffs bringing claims on behalf of overlapping, putative nationwide classes, in addition to one or more putative statewide subclasses. Each proposed class includes all purchasers of the PWRcell system in the United States. *See Locatell* FAC ¶ 80 (seeking to represent class of "[a]ll persons in the United States who purchased or leased a Generac PWRcell System" and a California subclass); *Moon* Complaint ¶ 69 (seeking to represent class of "all persons in the United States who purchased, leased, or otherwise acquired a defective Generac PWRcell System" and a California subclass); *Haak* Complaint ¶ 88 (seeking to represent "[a]ll persons and entities within the United States . . . that purchased and had installed a residential solar energy system equipped with . . . []the SnapRS 801 switch[]" and a Florida subclass); *Basler* Complaint ¶ 223 (seeking to represent class of "all persons who purchased the Generac PWRcell system in the United States" and statewide subclasses for nine different states); *Dillon* Complaint ¶ 70 (seeking to represent "[a]ll

persons and entities within the United States . . . that purchased and had installed a residential solar energy system equipped with . . . []the SnapRS 801 switch[]" and a Tennessee subclass).

Each of the Actions also seeks damages based on the same or similar theories of liability. All five Actions assert claims for alleged breach of Generac's express warranty and alleged breach of implied warranty (under state law or the Magnuson-Moss Warranty Act) based on allegations that the PWRcell system was defective, unsafe, and not as warranted by Generac. *See Locatell* FAC ¶¶ 89-149; *Moon* Complaint ¶¶ 77-134; *Haak* Complaint ¶¶ 101-118; *Basler* Complaint ¶¶ 243-275; *Dillon* Complaint ¶¶ 92-107, 139-167. The Actions also all assert either claims for fraud, misrepresentation, and unjust enrichment or claims for violation of consumer protection laws based on allegations that Generac concealed its knowledge that the PWRcell system was defective and unsafe. *See Locatell* FAC ¶¶ 150-176; *Moon* Complaint ¶¶ 135-162; *Haak* Complaint ¶¶ 119-167; *Basler* Complaint ¶¶ 284-437; *Dillon* Complaint ¶¶ 108-138, 168-175.

## ARGUMENT

Cases should be centralized in an MDL proceeding pursuant to 28 U.S.C. § 1407 if three elements are met: the "actions involv[e] one or more common questions of fact," centralization will "be for the convenience of parties and witnesses," and centralization "will promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a).[3] The Actions meet all three elements. The Actions clearly involve one or more common questions of fact because they are based on virtually identical factual allegations, are brought on behalf of overlapping putative nationwide

---

[3] Whether the "actions involv[e] common questions" under § 1407 is distinct from whether there are questions "common to the class" under Fed. R. Civ. P. 23(a) that may make class certification appropriate. Under § 1407, the issue is whether common questions exist across different cases that should be addressed in the same MDL proceeding (as is true here). That is quite different from whether different plaintiffs' and class members' claims can be adjudicated based on common evidence at a class trial, as required for class certification. The Generac Defendants maintain that the Actions are inappropriate for class treatment and intend to oppose class certification.

classes, and assert identical or nearly identical legal claims. Transfer will promote the efficient conduct of the litigation and the convenience of parties and witnesses by allowing a single court to decide common issues and coordinate discovery across all five cases, thus preventing duplicative discovery and inconsistent rulings, including on whether to certify a nationwide class.

The Panel therefore should order centralization of the Actions and transfer them to a single district court for coordinated or consolidated proceedings. The Eastern District of Wisconsin is the most appropriate venue for these Actions. The Generac Defendants therefore request that the Actions (and any subsequent tag-along actions) be transferred to the Eastern District of Wisconsin.

## I.    The Panel Should Transfer These Cases To A Single District Court For Coordinated Or Consolidated Pretrial Proceedings Pursuant To 28 U.S.C. § 1407.

### A.    The Actions Involve Common Questions Of Fact.

Centralization is warranted under § 1407 when multiple cases share a "common factual core." *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 398 F. Supp. 2d 1365, 1367 (J.P.M.L. 2005). "[C]entralization under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *In re: Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374, 1376-77 (J.P.M.L. 2011).

The Actions undoubtedly share a common factual core. The five complaints all plead nearly identical factual allegations regarding the same allegedly defective product (the PWRcell system) and the same defendant's allegedly improper conduct (Generac's allegedly unfair and deceptive marketing and distribution of the PWRcell system). The Actions include the same factual description of the alleged defect, namely that the SnapRS components of the PWRcell system become overactive, overheat, reduce electricity production, and can cause property damage. *See Locatell* FAC ¶¶ 4-5; *Moon* Complaint ¶ 4; *Haak* Complaint ¶¶ 2, 37, 63; *Basler* Complaint ¶¶ 43-44, 52; *Dillon* Complaint ¶¶ 1, 43, 46, 60. All five complaints likewise rely on

the same or similar theories of Generac's allegedly improper conduct, namely that Generac was aware of the defect, failed to disclose it, continued to market the product, and refused to replace the product or offer other remedies. *See Locatell* FAC ¶¶ 5, 64; *Moon* Complaint ¶¶ 5, 56-57; *Haak* Complaint ¶¶ 3-7; *Basler* Complaint ¶¶ 7-10; *Dillon* Complaint ¶¶ 8-9, 14-15.

Those common factual questions warrant centralization. For plaintiffs in the Actions to litigate their claims against the Generac Defendants, they will have to develop—and the court will have to consider—the same evidence regarding the issues shared across the Actions, including whether the SnapRS components of the PWRcell system have design or manufacturing defects; whether any defects are capable of causing the sorts of economic losses and property damages plaintiffs allege; whether Generac knew or should have known of such defects; and whether Generac's sales and marketing practices breached express or implied warranties, misrepresented the PWRcell system, or violated consumer protection laws.

The Actions are also likely to involve identical third-party discovery into the role that PHS (or other solar energy system retailers and installers) played in causing or contributing to the alleged damages, in misrepresenting or failing to disclose relevant information to plaintiffs about performance capabilities of their solar systems, and in responding to and addressing plaintiffs' complaints. *See, e.g.*, *In re Acetaminophen – ASD/ADHD Prods. Liab. Litig.*, 2022 WL 5409345, at *2 (J.P.M.L. Oct. 5, 2022) ("A single MDL is the most appropriate vehicle for . . . discovery of . . . third parties."); *In re Digital Advertising Antitrust Litig.*, 555 F. Supp. 3d 1372, 1380 (J.P.M.L. 2021) (anticipated third-party discovery warranted centralization).[4]

---

[4] At the time that PHS entered bankruptcy, class actions and state attorney-general actions were pending against PHS in multiple states related to allegedly malfunctioning solar energy systems it had sold or installed (*e.g.*, *Annon v. PHS*, No. 2:22-cv-03174 (S.D. Ohio); *State of Ohio v. PHS*, No. CV-22-969176 (Ohio Ct. of Common Pleas Cuyahoga Cnty.); *State of Missouri v. PHS*, No. 22SL-CC04177 (Mo. Cir. Ct. St. Louis Cnty)).

The Panel regularly centralizes consumer class-action litigation that, like the Actions, involves the same defendant's allegedly defective product. *See, e.g.*, *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs. & Prods. Liab. Litig.*, 466 F. Supp. 3d 1380, 1381 (J.P.M.L. 2020) (centralizing putative class actions regarding identical allegations of defective manufacture and deceptive marketing of tractor hydraulic fluid products); *In re: Navistar Maxxforce Engines Mktg., Sales Pracs., & Prods. Liab. Litig.*, 67 F. Supp. 3d 1382, 1383 (J.P.M.L. 2014) (centralizing putative class actions for breach of warranty based on alleged defect in Navistar's emission control system for diesel engines); *In re: MI Windows & Doors, Inc., Prods. Liab. Litig.*, 857 F. Supp. 2d 1374, 1375 (J.P.M.L. 2012) (noting that the Panel has "often found centralization appropriate" in cases "involving similar products manufactured by the same defendant where a common defect was alleged"). Because centralization does not require a complete identity of common issues, the Panel has often centralized such cases even where, as here, they raise claims under different states' laws for breach of warranty, fraud, or consumer protection. *See, e.g.*, *In re Seresto Flea & Tick Collar Mktg., Sales Pracs. & Prods. Liab. Litig.*, 556 F. Supp. 3d 1380, 1380-81 (J.P.M.L. 2021) (centralizing putative class actions involving overlapping claims for violation of consumer protection statutes, breach of warranties, and unjust enrichment); *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1357, 1358-59 (J.P.M.L. 2019) (centralizing putative class actions for breach of warranty, fraud, unjust enrichment, and violation of consumer protection statutes alleging that Fisher Price's product was defective and its marketing was misleading). Moreover, the Panel has centralized consumer class actions that have involved overlapping nationwide putative classes and thus presented common factual issues for class discovery. *See, e.g.*, *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 2023 WL 1811816, at *1 (J.P.M.L. Feb. 1, 2023)

(transferring five putative nationwide class actions pending in four districts alleging breach of warranty, unjust enrichment, and violation of consumer protection statutes); *In re Folgers Coffee Mktg. & Sales Pracs. Litig.*, 532 F. Supp. 3d 1416, 1416-17 (J.P.M.L. 2021) (centralizing five putative nationwide class actions alleging breach of warranty, misrepresentation, unjust enrichment, and violation of consumer protection laws based on allegations of false advertising).

The five Actions have recently been filed over the span of only a few months, and a sixth related case was filed just last week, so it would not be surprising if additional putative class actions raising most or all of the same issues were soon filed. That prospect also warrants transfer. *See, e.g.*, *In re Crop Protection Prods. Loyalty Program Antitrust Litig.*, 2023 WL 1811955, at *1 (J.P.M.L. Feb. 6, 2023) (the "likelihood of additional tag-along actions" supports centralization).

### B.    Centralization Will Promote The Efficient Conduct Of The Litigation.

The Panel also considers whether centralization will "promote the just and efficient conduct" of the cases. 28 U.S.C. § 1407(a). The Panel regularly finds this element to be met when "[c]entralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings (in particular with respect to class certification and *Daubert* issues), and conserve the resources of the parties, their counsel, and the judiciary." *In re: Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prods. Liab. Litig.*, 966 F. Supp. 2d 1380, 1382 (J.P.M.L. Feb. 14, 2014).

For all those reasons, centralization of the Actions will promote the efficient conduct of this litigation. Because all the Actions are based on identical or nearly identical factual allegations and legal theories, centralization will eliminate the need for duplicative fact and expert discovery and duplicative motion practice. It will be substantially more efficient for discovery and motion practice to proceed in one streamlined proceeding before a single district court judge. That is especially so because there likely will be far-reaching and costly common discovery here relating

10

not only to the merits of plaintiffs' individual claims but also to the putative nationwide class claims, and that common discovery will involve numerous expert issues. Moreover, because the plaintiffs in each Action are represented by different attorneys, centralization will be far more practicable than other forms of informal coordination. *See, e.g.*, *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d at 1360 (finding that centralization will "provide superior coordination than could be achieved informally among counsel" when there were "at least five groups of plaintiffs' counsel").

Further, there likely will be extensive briefing in all the Actions (and any tag-along actions) on similar motions, including motions for class certification, motions for summary judgment, and *Daubert* motions, which a single judge could consider and decide if the Actions are centralized. That anticipated motion practice also carries a significant risk of inconsistent pretrial rulings by different courts if the Actions continue to proceed in four different jurisdictions rather than in a centralized proceeding in which a single judge can issue rulings that apply to all five Actions.

Critically, each Action brings claims on behalf of overlapping and potentially conflicting nationwide classes of purchasers of the PWRcell system (in addition to one or more putative statewide subclasses), and centralization of the Actions is particularly warranted to prevent inconsistent rulings on motions for class certification. As the Panel has long recognized, "a potential for conflicting or overlapping class actions presents *one of the strongest reasons* for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings." *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970) (emphasis added); *accord In re Brown Co. Sec. Litig.*, 325 F. Supp. 307, 308 (J.P.M.L. 1971) ("The additional fact that most of these actions are brought as class actions on behalf of the same class practically compels their transfer to a single district so as to avoid overlapping or inconsistent class action

rulings."); *In re Nissan Motor Corp. Antitrust Litig.*, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974) (centralizing putative class litigation "ensur[es] consistent application of Rule 23"). Moreover, assigning multiple putative class actions to a single judge is clearly the "most efficient way" to resolve issues of class certification. *In re Litig. Arising from the Termination of the Ret. Plan for Emps. of Fireman's Fund Ins. Co.*, 422 F. Supp. 287, 290 (J.P.M.L. 1976). The Panel thus centralizes "substantial overlap[ping]" putative nationwide class actions practically as a matter of course to "prevent inconsistent pretrial rulings . . . with respect to class certification." *In re Samsung Top-Load Washing Machine Mktg., Sales Pracs. & Prods. Liab. Litig.*, 278 F. Supp. 3d 1376, 1377 (J.P.M.L. 2017); *see, e.g.*, *In re: Discover Card Payment Protection Plan Mktg. & Sales Pracs. Litig.*, 764 F. Supp. 2d 1341, 1342-43 (J.P.M.L. 2011); *In re Seresto Flea & Tick Collar Mktg., Sales Pracs. & Prods. Liab. Litig.*, 556 F. Supp. 3d at 1381; *In re Literary Works in Elec. Databases*, 2000 WL 33225502, at *1 (J.P.M.L. Dec. 6, 2000) (consolidating two putative class actions to "prevent inconsistent or repetitive pretrial rulings [] such as regarding overlapping class action requests[]"). The Panel likewise should centralize the Actions to forestall conflicting rulings on class certification and to avoid the resulting challenges to managing the litigation.

Transferring the Actions is especially appropriate here because the actions raise numerous complex issues for discovery, including expert discovery and third-party discovery, into the alleged product defects and whether they potentially can cause the claimed damages. The Panel has recognized that centralization creates additional efficiencies when the issues for discovery are particularly complex and require expert testimony. *See, e.g.*, *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d at 1359 (finding that need for complex expert discovery into risks posed by allegedly defective product design warranted centralization). The complex issues presented here include (among others) whether a

manufacturing or design defect in the SnapRS may be the cause of the problems plaintiffs claim to have experienced; whether there may be alternative causes (including alternative causes related to improper installation or misconduct by third-party retailers and installers); whether and how any such defect may cause decreased energy production or increased energy bills; whether the SnapRS poses any risk of property damage; whether Generac remedied any problems with the firmware updates or the release of its new generation of SnapRS; and whether Generac should have done a product recall. Additional complex issues that likely will be the subject of discovery at the class-certification stage relate to whether the named plaintiffs' claims present individualized issues precluding class treatment. Those issues include how the amount of energy that putative class members reasonably could have expected their solar energy systems to produce is impacted by individualized factors (such as the geographical region where they live and how the systems were installed on their homes), and whether the different third-party retailers and installers involved in executing the product warranty are at fault for particular individuals' claimed damages.

All of the Actions are still at the earliest stages of litigation. The first-filed case (*Haak*) had not advanced past briefing on Generac's pending Motion To Dismiss when the district court granted a motion to stay and administratively closed the case pending the Panel's resolution of the Motion.[5] No discovery has occurred in any of the Actions. So there is no risk that the benefits of centralization, including streamlining and coordinating discovery and motion practice, may be outweighed by disruption to significant litigation efforts underway in the transferor courts. To the contrary, centralization at this time will maximize judicial efficiency. *See, e.g.*, *In re Molinaro/Catanzaro Patent Litig.*, 380 F. Supp. 794, 795 (J.P.M.L. 1974) (ruling that pending

---

[5] The courts in *Locatell*, *Moon*, *Basler*, and *Dillon* likewise all have stayed proceedings pending the Panel's determination of whether to centralize the Actions. None of those Actions had advanced farther than motion-to-dismiss briefing.

motions to dismiss were no reason to delay transfer as they could be decided by transferee court).

### C.    Centralization Will Serve The Convenience Of The Parties And Witnesses.

Centralization will also enhance "the convenience of parties and witnesses." 28 U.S.C. § 1407(a). Centralizing the Actions will avoid duplicative discovery and motion practice, "effectuating an overall savings of cost and a minimum of inconvenience to all." *In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003). Centralization also will ensure that witnesses are protected from multiple depositions or overlapping discovery requests. *See, e.g.*, *In re: Pilot Flying J Fuel Rebate Contract Litig. (No. II)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014). No party will be prejudiced by centralization. The Panel should order the Actions to be centralized.

### II.    The Panel Should Transfer These Cases To The Eastern District Of Wisconsin And Assign Them To The Honorable Brett H. Ludwig.

### A.    The Eastern District Of Wisconsin Is The Most Appropriate Venue.

For a number of reasons frequently considered by the Panel, the Eastern District of Wisconsin is the most appropriate venue for centralizing the Actions, and the Panel should transfer the Actions to that District.

*First*, two of the five Actions, *Basler* and *Dillon*, are pending in the Eastern District of Wisconsin, the only District where more than one Action has been filed. In fact, *Basler* was filed by fourteen named plaintiffs (while each of the other Actions was filed by only one), so the vast majority of the named plaintiffs chose to file suit in the Eastern District of Wisconsin. Of the five Actions, *Basler* contains the most developed factual allegations and the broadest legal claims, involving fourteen named plaintiffs alleging claims under the laws of nine states, and seeking to represent nine different putative statewide subclasses in addition to a putative nationwide class. *See Basler* Complaint ¶¶ 16-27, 71-176, 224-232, 309-437. Those considerations all favor transfer to the Eastern District of Wisconsin. *See, e.g.*, *In re Windsor Wood Clad Window Prods. Liab.*

*Litig.*, 176 F. Supp. 3d 1372, 1374 (J.P.M.L. 2016) (ordering transfer to district where two actions "already [were] pending"); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 323 F. Supp. 2d 1381, 1383 (J.P.M.L. 2004) (ordering transfer to district where "plurality" of cases was pending); *In re: Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 65 F. Supp. 3d 1397, 1398 (J.P.M.L. 2014) (ordering transfer to district where "broadest-based complaint" was pending).[6]

**Second**, the Generac Defendants' headquarters are located in Waukesha, Wisconsin, which is in the Eastern District of Wisconsin. Transfer to that District thus makes sense to the extent that many witnesses (including the Generac Defendants' officers and many of its employees) and other evidence common to all five Actions are located there. *See, e.g.*, *In re Harley-Davidson Aftermarket Parts Mktg., Sales & Antitrust Litig.*, 2023 WL 1811953, at *1 (J.P.M.L. Feb. 8, 2023) (transferring class actions to Eastern District of Wisconsin because "Defendant has its headquarters in this district, where common witnesses and other evidence likely will be found").[7]

**Third**, the Eastern District of Wisconsin is a "logical situs in regard to the geographic dispersal" of the Actions, which are pending in California, Florida, and Wisconsin. *In re Bausch & Lomb Inc. Contact Lens Sol. Prods. Liab. Litig.*, 444 F. Supp. 2d 1336, 1338 (J.P.M.L. 2006). The Panel has noted that the Eastern District of Wisconsin is "centrally located" in the United States, making it convenient for parties and counsel in both the pending Actions and any future tag-along cases. *In re: Velocity Express, Inc., Wage & Hour Emp. Pracs. Litig.*, 581 F. Supp. 2d 1368, 1369 (J.P.M.L. 2008) (transferring cases to the Eastern District of Wisconsin).

---

[6] As noted *supra* (at n.1), the parties and the court in *Basler* and *Dillon* have already taken action to consolidate those two cases, and the court has granted plaintiffs' unopposed motion to consolidate. That fact also weighs in favor of the Eastern District of Wisconsin as the transferee district. *See In re Computervision Corp. Secs. Litig.*, 814 F. Supp. 85, 86 (J.P.M.L. 1993) (selecting district where pending cases there had already been consolidated by the district court).

[7] Generac Holdings maintains that it is not subject to personal jurisdiction outside Wisconsin and Delaware.

*Fourth*, the overall docket conditions for the Eastern District of Wisconsin, as reported by the Administrative Office of the U.S. Courts, further support centralizing the Actions there. For instance, as of the last reported Federal Court Management Statistics, the percentage of civil cases pending in the Eastern District of Wisconsin that are over three years old was 5.9%; that is lower than for any other District in the Seventh Circuit, and well below the national percentage of 14.3%. *See* Federal Court Management Statistics (Sept. 2022), *available at* https://www.uscourts.gov/ statistics-reports/federal-court-management-statistics-september-2022. The average number of pending cases per judge there is 430; that is also well below the national average (which is 1,094). *Id.* In addition, according to the Panel's website, the Eastern District of Wisconsin currently has only one MDL pending there (*In re Harley-Davidson*). *See* Pending MDLs By District, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-16-2023.pdf (Feb. 16, 2023). The fact that there are relatively few MDLs pending in the District also favors transfer there. *See, e.g.*, *In re: Nuvaring Prods. Liab. Litig.*, 572 F. Supp. 2d 1382, 1383 (J.P.M.L. 2008) (transferring cases to district with "relatively low number of pending MDL dockets").

**B.    Transfer To The Eastern District Of Wisconsin Provides Opportunities For Coordinating These Actions With Related Litigation Before Judge Ludwig.**

Centralization in the Eastern District of Wisconsin also would significantly enhance opportunities to coordinate the Actions with other recently filed and overlapping lawsuits against Generac Holdings and its officers and directors.

Specifically, four additional actions have recently been filed against Generac Holdings and its officers and directors in the Eastern District of Wisconsin. They include two putative securities class actions alleging that Generac Holdings and its officers violated federal securities laws because they misled investors by failing to disclose the nature and extent of the Company's exposure due to, and to account for, the warranty liability associated with the allegedly defective

SnapRS products. *See* Complaint ¶¶ 1-9, *Oakland Cnty. Voluntary Emps.' Beneficiary Assoc. et al. v. Generac Holdings, et al.*, No. 2:22-cv-01436 (E.D. Wis. filed Dec. 1, 2022) (Exhibit 2); Complaint ¶¶ 1-19, *Cal. Ironworkers Field Pension Tr. v. Generac Holdings, et al.*, No. 2:23-cv-00081 (E.D. Wis. filed Jan. 20, 2023) (Exhibit 3). The actions also include two shareholder derivative suits alleging that officers and directors of Generac Holdings breached their fiduciary duties based on similar allegations that they failed to disclose information about the allegedly defective SnapRS products. *See* Complaint ¶¶ 1-17, *Gervat v. Jagdfeld, et al.*, No. 2:23-cv-00146 (E.D. Wis. filed Feb. 3, 2023) (Exhibit 4); Complaint ¶¶ 1-8, *Sterbcow, et al. v. Jagdfeld, et al.*, No. 2:23-cv-00302 (E.D. Wis. filed Mar. 6, 2023) (Exhibit 5). Those cases are all pending in the Eastern District of Wisconsin (in Milwaukee) before Judge Ludwig, who recently consolidated the two securities actions on the ground that the two cases involve common questions of law and fact.

These four actions are not before the Panel, and the Generac Defendants are not seeking to have the Panel consolidate them with the Actions at this time—but their pendency before Judge Ludwig in the Eastern District of Wisconsin provides an additional reason for the Panel to transfer the Actions to that District and assign them to Judge Ludwig. Because the Actions raise many of the same factual allegations at issue in the putative securities class actions and shareholder derivative lawsuits already before Judge Ludwig, transferring the Actions to the same District likely will create additional opportunities for the parties and the District Court to coordinate discovery and pretrial proceedings for all nine cases. To facilitate such efficiencies, the Panel has previously centralized actions in a district where separate but related federal litigation is pending. *See, e.g.*, *In re Sta-Power Indus. Sec. & Antitrust Litig.*, 372 F. Supp. 1398, 1399 (J.P.M.L. 1974) (centralizing cases in district where separate SEC action involving similar factual issues was pending). Moreover, if the Panel chose to assign the Actions to Judge Ludwig, it obviously would

promote judicial efficiency to have all the cases before a single district court judge who can develop a familiarity with the litigation and the common underlying facts and technology, and who can manage all the cases to coordinate discovery to the extent warranted by the shared factual issues. *See, e.g.*, *id.* at 1399-1400 (assigning cases to judge already overseeing related litigation).

Accordingly, even though the two Actions pending in the Eastern District of Wisconsin (*Basler* and *Dillon*) are proceeding before a magistrate judge, the Panel can transfer all of the Actions to that District and assign them to Judge Ludwig in particular.[8] And even if the Panel declines to transfer them to Judge Ludwig, there are other judges in the Eastern District of Wisconsin who have experience managing MDLs, and to whom the Panel could entrust this litigation so that it may be efficiently coordinated with the other cases in the same District before Judge Ludwig.

### C.     The Northern District Of California And The Other Transferor Districts Are Far Less Appropriate Venues Than The Eastern District Of Wisconsin.

For all the foregoing reasons, the Eastern District of Wisconsin is a far more appropriate venue than any of the other districts in which Actions have been filed (the Northern and Eastern Districts of California and the Middle District of Florida). Those other venues each have fewer and narrower cases pending in them than the Eastern District of Wisconsin does.[9] Although some discovery in some Actions might relate to plaintiffs who reside in California and Florida, other plaintiff-specific discovery in other Actions would relate to plaintiffs residing in Wisconsin. In any case, all the Actions seek certification of putative nationwide classes, so plaintiff-specific discovery in particular Actions likely will be less extensive and less significant than common

---

[8] The Panel assigns cases to district court judges pursuant to 28 U.S.C. § 1407(b).

[9] Although the first-filed Action was *Haak*, pending in the Middle District of Florida, that does not warrant centralization there because *Haak* was filed only five months ago, is still in its earliest stages, and has not advanced beyond the other Actions. *See supra* at 13.

discovery of the Generac Defendants (which are headquartered in the Eastern District of Wisconsin).[10] Moreover, neither California nor Florida is "centrally located" like Wisconsin. *In re: Velocity Express,* 581 F. Supp. 2d at 1369. Further, according to the data collected by the Administrative Office of the U.S. Courts cited *supra* (at 16), docket conditions in the Northern and Eastern Districts of California and Middle District of Florida are less appropriate for this MDL than the Eastern District of Wisconsin. For instance, each of those three districts has a higher percentage of civil cases that have been pending over three years and a higher average number of pending cases per judge than the Eastern District of Wisconsin. Finally, centralization of this litigation in the Northern or Eastern District of California or the Middle District of Florida venues would not provide the same opportunity to coordinate these Actions with the securities and shareholder derivative cases now before Judge Ludwig in the Eastern District of Wisconsin.[11]

In his Brief in Support of the Motion ("Pl. Br."), Plaintiff Moon argues for centralization in the Northern District of California before Judge Breyer, but that request is based largely on considerations that are irrelevant to this litigation and do not justify transfer to that District. Plaintiff Moon argues that "California is at the forefront of residential rooftop solar energy, with significant investments in solar energy production and technology and developing regulatory infrastructure to support and manage solar industry growth," Pl. Br. at 13; that California is "the hub of solar energy production and technology" as a result of a 2020 requirement that "all new home construction must be equipped with rooftop solar panels," *id*. at 14; and that "[r]esidential solar power has also become more prominent in California as catastrophic wildfires and sometimes

---

[10] Some other likely Generac Defendant witnesses are located in Maine, but that does not favor centralization in either the California or Florida venues.

[11] All these same considerations also would weigh against transfer to the Eastern District of North Carolina, where the state court in which the *Baltimore* case has been filed is located.

days' long utility power outages have become more commonplace," *id.* at 15. Those putative facts concerning the solar power industry are irrelevant to the issue of which district and judge would be most appropriate to oversee the Actions. Those putative facts do not bear on any of the factors that the Panel has considered in selecting an appropriate MDL court under § 1407, and do not show how transfer to a California venue would promote the efficient conduct of the Actions.

Plaintiff Moon also unpersuasively argues for transfer to the Northern District of California on the grounds that Generac has marketed the PWRcell system in California, Generac has acquired "West Coast companies" (including companies headquartered in California, British Columbia, Oregon, and Colorado), and some discovery will relate to those companies. *See* Pl. Br. at 16-18. But even if some discovery in this litigation may relate to those companies, that does not show that the Actions will involve substantial discovery in California, nor does it warrant transferring the Actions to the Northern District of California rather than the Eastern District of Wisconsin. To the contrary, the non-California complaints—especially the *Basler* complaint filed by plaintiffs from nine different states—show that Generac's products were purchased and installed in many states across the country. *See Basler* Complaint ¶¶ 14-27, 71-176 (bringing claims on behalf of purchasers of PWRcell systems in Georgia, Illinois, Indiana, Kansas, Michigan, Missouri, Pennsylvania, Tennessee, and Virginia). There is no reason to believe discovery will be substantially centered in California, and every reason to believe that a centrally located district like the Eastern District of Wisconsin will be the most appropriate venue.

## **CONCLUSION**

The Panel should centralize the Actions, transfer them for coordinated or consolidated proceedings to the Eastern District of Wisconsin, and assign them to the Honorable Brett H. Ludwig, U.S. District Court Judge for the Eastern District of Wisconsin.

Respectfully submitted,

Dated: March 28, 2023

*/s/ Michael J. Gill*
Michael J. Gill
Michael A. Olsen
Michael A. Scodro
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Fax: (312) 701-7711
mgill@mayerbrown.com
molsen@mayerbrown.com
mscodro@mayerbrown.com

*Attorneys for Defendants Generac Power Systems, Inc. and Generac Holdings Inc.*